UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATHANIEL RICHARDS,<br><br>       Plaintiff,<br><br> v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>       Defendant. | Case No. 3:13-cv-05589-BHS-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for July 11, 2014 |

  Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

  On October 5, 2009, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications that he became disabled as of December 31, 2004, due to major depression, a panic disorder and scoliosis.  See ECF #16, Administrative Record ("AR") 31, 238.  Both applications were denied upon initial

REPORT AND RECOMMENDATION - 1

administrative review on October 5, 2009, and on reconsideration on April 16, 2010. See AR 31. A hearing was held before an administrative law judge ("ALJ") on July 20, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert. See AR 58-81.

In a decision dated August 19, 2011, the ALJ determined plaintiff to be not disabled. See AR 31-49.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 3, 2013, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 404.981, § 416.1481.  On July 29, 2013, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3.  The administrative record was filed with the Court on October 16, 2013. See ECF #16.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the opinion evidence from Daniel M. Neims, Psy.D., Terilee Wingate, Ph.D., Rogelio Zaragoza, M.D., and David Reynolds, Ph.D.; (2) in discounting plaintiff's credibility; and (3) in failing to obtain the services of a vocational expert.  For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating the opinions of Dr. Neims and Dr. Wingate, and therefore in determining plaintiff to be not disabled.  Also for the reasons set forth below, while the undersigned recommends that defendant's decision to deny benefits should be reversed on this basis, this matter instead should be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by

REPORT AND RECOMMENDATION - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

I.     The ALJ's Evaluation of the Opinions of Dr. Neims and Dr. Wingate

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

REPORT AND RECOMMENDATION - 4

(citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

    A.    <u>Dr. Neims</u>

In regard to the opinion of Dr. Neims, the ALJ found as follows:

> In July 2009, Daniel M. Neims, Psy.D., examined the claimant and reported the claimant had moderate to marked cognitive limitations, and largely marked limitations in social functioning with a severe limitation in the ability to interact appropriately with the public.  (Exhibit 11F/5).  Dr. Neims further assessed a GAF [score] of 46.[2]  These conclusions are inconsistent with the

---

[2] A GAF ("global assessment of functioning") score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted).  "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Id. (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning.").

REPORT AND RECOMMENDATION - 5

record noted in assessing the B criteria,[3] *supra*, and with the opinion of Dr. [Dan] Donahue, who assessed the longitudinal record.

AR 44 (internal footnote omitted).  With respect to the ALJ's stated reliance on "the record noted in assessing the 'B criteria,'" the ALJ earlier in his decision found in relevant part:

> In activities of daily living, the claimant has mild restriction.  The claimant reported he had no difficulties taking care of his personal care needs in 2009 when he lived in a tent city.  (Exhibit 9E).  He reported he prepared his own simple meals daily and got around by walking or using public transportation.  (Exhibit 9E).  The claimant also testified that he is homeless and sleeps on the streets.
>
> In social functioning, the claimant has mild difficulties.  The claimant testified that he regularly went to 12-step meetings.  He further testified that he had friends that he would do things with such as talk, walk, and have meals.  The claimant reported he spent most of [sic] days at a clubhouse.  (Exhibit 5F).  The claimant also reported he was scared of authority figures but tried to get along with them.  (Exhibit 9E/6).
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties.  The claimant reported he was able to count change and use a checkbook/moneyorders.  (Exhibit 9E).  The claimant was described as a fairly good historian and able to provide quite a bit of information.  (Exhibit 18F/21).  In December 2009, the claimant reported he was reading a book on medieval times.  (Exhibit 18F/26).  Upon exam, the claimant had fair concentration.  (Exhibit 5F).  The claimant reported he did not handle stress very well, and his ability to handle changes in routine varied.  (Exhibit 9E/6).
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

AR 35-36.  As for the opinion of Dr. Donahue, the ALJ also found:

> State agency medical consultant Dan Donahue, Ph.D., completed a psychiatric review technique form on March 29, 2010.  (Exhibit 20F).  Dr. Donahue reviewed the claimant's medical records and determined the claimant had mild limitation in activities of daily living, mild limitation in maintaining social functioning, moderate limitation in maintaining concentration, persistence, or pace, and insufficient evidence to establish episodes of

---

[3] The "B criteria" consist of "four criteria" – activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation – which describe "impairment-related functional limitations that are incompatible with the ability to do any gainful activity" in regard to each mental disorder set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). Id. at §12.00A, C.

REPORT AND RECOMMENDATION - 6

> decompensation. That same day, Dr. Donahue completed a mental residual functional capacity assessment of the claimant. (Exhibit 19F). Dr. Donahue found the claimant: has adequate abilities in the areas of understanding and memory for simple types of work; his ability to sustain concentration, persistence and pace is adequate for simpler types of jobs; has some difficulty in social areas but the medical evidence does not suggest these difficulties would preclude successful work at a basic level, he is actively participating in a mental health treatment group and seems to do well in that setting; has adequate ability to adapt to changes at work, be aware of normal hazards and take precautions; can travel in unfamiliar areas and use public transportation; can set realistic goals and plan independently; has developed and maintained ties with community services; and while under serious stressors, he has been able to remain sober and cooperate with treatment plans. The undersigned gives significant weight to [Dr.] Donahue's opinion because it was based on a review of the claimant's medical records, the assessment as to the claimant's abilities was supported with references to the objective medical evidence of record, and the opinion is consistent with the overall objective evidence of record.

AR 42-43 (internal footnote omitted).

Plaintiff argues, and the undersigned agrees, that the ALJ did not provide sufficiently valid reasons for rejecting the opinion of Dr. Neims. First, the activities the ALJ noted in regard to the B criteria are not necessarily inconsistent with the mental functional limitations Dr. Neims found in the areas of cognitive and social functioning, as the record fails to show plaintiff is only mildly to moderately limited in his ability to engage in those activities as the ALJ found. See AR 422; see also 64, 254-58, 284-87, 304, 306, 341, 364-65, 425. Second, as pointed out by plaintiff, it was error for the ALJ to give more weight to the opinion of Dr. Donahue, a non-examining medical source, than to that of Dr. Neims, an examining medical source. See Lester, 81 F.3d at 830-31.

While a non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record" (id. at 830-31; see also Tonapetyan, 242 F.3d at 1149), the ALJ failed to specify the medical or other independent evidence in the record he found to be consistent with Dr. Donahue's opinion (see Embrey v. Bowen, 849 F.2d

REPORT AND RECOMMENDATION - 7

418, 421 (9th Cir. 1988)).[4] Further, a substantial portion of the medical evidence in the record – including the evaluation report of Dr. Neims – indicates the presence of greater mental health symptoms and functional limitations than those noted by Dr. Donahue. See *73-79*, *335-41*, *365-66*, 400, 410, *418-30*, 456, *586-94*. The ALJ's failure to discuss this evidence in any detail in regard to the opinion of Dr. Neims was improper.

B.  Dr. Wingate

The ALJ addressed the opinion of Dr. Wingate as follows:

> Terrilee Wingate, Ph.D., completed a [state agency] psychological/psychiatric form in December 2008. (Exhibit 3F). It was her opinion the claimant had no limitation in his ability to understand and remember simple instructions, but he had a marked limitation in his ability to exercise judgment and make decisions. She further found moderate to marked limitations in social functioning. It was further her opinion that with appropriate treatment in an intensive dual diagnosis program that the claimant could work. Dr. Wingate again examined the claimant in July 2010. (Exhibit 23F/10). It was her opinion upon this exam that the claimant had largely mild limitations in cognitive functioning, and largely moderate limitations in social functioning. The undersigned gives some weight to the opinions of cognitive functioning because they are consistent with the overall evidence of record including the claimant's education and mental status test results. Less weight is given to the opinion of the claimant's social functioning because it was largely based on the claimant's self-report.

AR 43-44 (internal footnote omitted). Again the undersigned agrees with plaintiff that the ALJ's stated reasons for not fully adopting the mental functional limitations Dr. Wingate assessed are not legally sufficient.

---

[4] As the Ninth Circuit has stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. . . .

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) (internal footnote omitted).

REPORT AND RECOMMENDATION - 8

First, while the ALJ stated he gave "some weight" to Dr. Wingate's opinion regarding plaintiff's cognitive functioning, he did not explain what he specifically meant by that or why he found some of Dr. Wingate's findings to be supported by the evidence in the record but not all of them. Second, to the extent that the ALJ rejected some of Dr. Wingate's findings concerning cognitive functioning due to their inconsistency with plaintiff's "education and mental status test results" (AR 44), again he failed to sufficiently explain what aspects of plaintiff's education or mental status test results – or indeed in regard to the latter, even whether he was referring to those of Dr. Wingate or to other treating and/or examining medical sources in the record – were inconsistent therewith. Given that in terms of plaintiff's ability to function cognitively the ALJ only found her to be limited to simple and repetitive tasks, the failure to adequately explain his rejection of the moderate to marked limitation in the ability to perform routine tasks and the marked limitation in the ability to exercise judgment and make decisions Dr. Wingate assessed cannot be said to be harmless error.[5] See AR 337, 591.

Third, as with his rejection of the cognitive limitations Dr. Wingate assessed, the ALJ also failed to adequately explain what he meant by giving "less weight" to the social limitations she found, that is, why he adopted some of those limitations but not others. In addition, although Dr. Wingate's evaluation reports show she relied to some extent on plaintiff's own self-report, she also clearly relied on her own observations as well as the mental status examination results she obtained, which indicate the presence of symptoms that potentially could result in the functional limitations she assessed. See AR 336-41; 586-94; Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion based on clinical observations supporting diagnosis of depression is competent evidence); Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (mental status

---

[5] See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

REPORT AND RECOMMENDATION - 9

examination results provide basis for diagnosis of psychiatric disorder, just as results of physical examination provide basis for physical illness or injury diagnosis). In other words, it is not at all clear that Dr. Wingate can be said to have relied to a large extent on plaintiff's self-reporting. See Morgan, 169 F.3d at 601 (physician's opinions premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted).

II.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's

REPORT AND RECOMMENDATION - 10

mental functional limitations, and thus in regard to plaintiff's residual functional capacity[6] as well as her ability to perform other jobs existing in significant numbers in the national economy,[7] remand for further consideration thereof is warranted.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

---

[6] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.
      An inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ is required to consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, furthermore, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7. The ALJ in this case assessed plaintiff with the mental residual functional capacity to perform simple, repetitive tasks, with only superficial contact with the general public. See AR 37. But because as discussed above the ALJ failed to give adequate reasons for rejecting the functional limitations assessed by both Dr. Neims and Dr. Wingate, that RFC assessment cannot be said to be supported by substantial evidence at this time.

[7] If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000). The Grids may be used if they "*completely and accurately* represent a claimant's limitations." Tackett, 180 F.3d at 1101 (emphasis in the original). That is, the claimant "must be able to perform the *full range* of jobs in a given category." Id. (emphasis in the original). If the claimant "has significant non-exertional impairments," however, reliance on the Grids is not appropriate.[9] Ostenbrock, 240 F.3d at 1162; Tackett, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids).
      At step five in this case, the ALJ relied on the Grids to find a significant number of jobs exist in the national economy that plaintiff could perform. See AR 45-47. Plaintiff argues that given the marked to severe mental functional limitations assessed by various medical opinion sources in the record, the ALJ should have obtained the services of a vocational expert to make this determination. Although as discussed above the ALJ erred in rejecting the functional limitations assessed by Drs. Neims and Wingate, it is far from clear that he would be required to adopt them, thereby making reliance on the Grids inappropriate. Accordingly, the undersigned declines at this time to find such error on the part of the ALJ or that the ALJ should have found plaintiff disabled.

REPORT AND RECOMMENDATION - 11

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **July 11, 2014**, as noted in the caption.

DATED this 16th day of June, 2014.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12